IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 09-cv-00928-CMA-MEH

PIKES PEAK NEPHROLOGY ASSOCIATES, P.C.,
BRAD H. YUAN, M.D.,
STEPHEN FOX, M.D.
MELINDA L. HOCKENSMITH, M.D.,

ROGER L. MALLORY, M.D.,
GEORGE A. DEVAULT, JR., M.D., and
JESSE A. FLAXENBURG, M.D.,

    Plaintiffs,

v.

TOTAL RENAL CARE, INC., a California corporation,

    Defendant.
_____

**ORDER GRANTING IN PART AND DENYING IN PART PARTIES' MOTIONS TO STAY AND/OR COMPEL ARBITRATION**
_____

This matter is before the Court on Plaintiffs' Motion to Stay Arbitration Proceeding or, Alternatively, for Order Compelling Arbitration Pursuant to Terms of Agreements (Doc. #5) and Defendant's Motion to Compel Arbitration Pursuant to 9 U.S.C. § 4 or, Alternatively, for a Stay Pending Resolution of Arbitration (Doc. #14). For the following reasons, Plaintiffs' and Defendant's Motions are GRANTED IN PART and DENIED IN PART.

I.    **BACKGROUND**[1]

Plaintiff Pikes Peak Nephrology Associates, P.C. ("PPNA"), has an established clinical nephrology practice in the greater Colorado Springs area, which services patients suffering from kidney disease. A significant portion of PPNA's patients suffer from End State Renal Disease ("ESRD"), a form of chronic kidney failure, which requires dialysis approximately three times per week. Plaintiffs Brad H. Yuan, M.D., Stephen Fox, M.D., Melinda Hockensmith, M.D., Roger L. Mallory, M.D., and George A. Devault, Jr., M.D., are shareholders in PPNA and physicians who practice with PPNA (collectively, "Shareholder Physician Plaintiffs"). Plaintiff Jesse A. Flaxenburg, M.D. is a medical doctor practicing with PPNA at certain facilities in Colorado. Each of the Shareholder Physician Plaintiffs, except for Jesse A. Flaxenburg, M.D., are signatories to certain Medical Director Agreements ("MDAs") underlying this dispute. Defendant Total Renal Care, Inc., now known as DaVita, Inc., is in the business of operating dialysis clinics throughout the greater Colorado Springs area. Plaintiff PPNA refers its ESRD patients to Defendant's clinics and other local dialysis facilities for treatment, based upon a patient's medical needs.

   A.    **The Underlying Medical Director Agreements & Dispute Resolution Provisions**

This dispute stems from various MDAs entered into in 1998, 2005, and 2006 (the "1998 MDA," "2005 MDA," and "2006 MDA", respectively). Pursuant to the MDAs, Plaintiff PPNA agreed to provide physicians ("Medical Directors") to oversee the

---

[1] Unless otherwise noted, the following facts are taken from the Complaint and the parties' motions.

operation of Defendant's clinics, as required by law.[2]  Each of the MDAs contains a non-competition provision that prohibits the Shareholder Plaintiffs from directly or indirectly owning any interest in, leasing, operating, extending credit to, or otherwise participating in any competing business, namely any business that engages in, or derives any economic benefit from, the offering, arranging or subcontracting of dialysis services or the manufacturing or distribution of dialysis supplies or equipment.  Each non-competition provision limits the proscribed acts for varying periods of time and within varying geographic radii.  Each of the MDAs also contain a dispute resolution provision, which provisions are the subject of the instant dispute.

The 1998 MDA contains the following dispute resolution provision, which prescribes arbitration:

> 27.    Arbitration.  Any controversy, dispute or claim arising out of or in connection with this Agreement, or the *breach*, termination or *validity* hereof, shall be settled by final and *binding arbitration* to be conducted by an arbitration tribunal in Denver, Colorado, pursuant to the rules of the American Arbitration Association...

(Doc. #5, Ex. E, ¶ 27) (emphasis added).

The 2005 MDA contains the following dispute resolution provision:

> 25.    Dispute Resolution.  In the event that a *dispute arises* between two or more parties *under this Agreement*, the parties will first negotiate in good faith to try to resolve the dispute.  Except for alleged breaches of Section 16 above [Non-Competition and Non-Solicitation Provision], if the dispute cannot be settled through negotiation within thirty (30 days), such dispute shall be settled by final and *binding arbitration* to be conducted by an arbitration tribunal in Colorado Springs, Colorado, in accordance with the Commercial Arbitration Rules of the American Arbitration Association ("Rules").

---

[2]  Each MDA concerns different clinics.  Nevertheless, the basic substance of the agreements is similar.

(Doc. #5, Ex. F, ¶ 25) (emphasis added).

The 2006 MDA contains the following dispute resolution provision, which prescribes mediation:

>  26.  Dispute Resolution.
>
>  26.1  Informal Resolution. Except for alleged breaches of Section 16 above [non-competition and non-solicitation provision], should any dispute between the parties arise under this Agreement, written notice of such dispute shall be delivered from one party to the other party and, thereafter, the parties, through appropriate representatives, shall first meet and attempt to resolve the dispute in face-to-face negotiations. This meeting shall occur within thirty (30) days of the time the written notice of such dispute is received by the other party.
>
>  26.2  Resolution Through Mediation. If no resolution is reached through informal resolution, pursuant to Section 26.1 above, the parties shall, within forty-five (45) days of the first meeting referred to in Section 26.1 above, attempt to settle the dispute by formal *mediation*. If the parties cannot otherwise agree upon a mediator and the place of the mediation within such forty-five (45) day period, the American Arbitration Association...shall administer the mediation. Such mediation shall occur no later than (90) days after the dispute arises...In the event that the parties are unable to resolve the dispute through formal mediation pursuant to this Section 26.2, the parties shall be entitled to seek any and all available legal remedies.

(Doc. #5, Ex. G, ¶¶ 26.1, 26.2) (emphasis added). As set forth in the above-quoted provisions, the 2005 and 2006 MDAs contain an exclusionary clause that appears to except from arbitration any "alleged breaches of Section 16," which is a non-competition and non-solicitation clause. The parties dispute the meaning and effect of these exclusionary clauses. Plaintiffs contend that breaches of the non-competition and non-solicitation provisions are not subject to the 2005 and 2006 MDA dispute resolution procedures. (Doc. #16 at 12, 14). Defendant contends the opposite. (Doc. #14-2 at 19, 21).

B.   **Defendant's Arbitration Demands**

On March 23, 2009, Defendant allegedly initiated an arbitration proceeding (the "Original Arbitration Demand") against Plaintiffs by serving a petition for arbitration under the rules of the American Arbitration Association ("AAA" and "AAA Rules"). (Doc. #14-3, Weir Affid., ¶ 9). On June 5, 2009, Defendant filed an Amended Arbitration Demand. (Doc. #14-3, Weir Affid., ¶ 9; Ex. H). Though the Original Arbitration Demand concerned the 1998, 2005, <u>and</u> 2006 MDAs, the Amended Arbitration Demand only concerned the 1998 and 2005 MDAs. (Doc. #14, Ex. H at 5-10). The Amended Arbitration Demand contained the following claims:

<u>Claims 1 and 2</u>:   Breach of the non-competition and non-solicitation provisions of 1998 and 2005 MDAs (against all Plaintiffs[3]), as a result of the following conduct:

1. owning and/or operating a business that provides, offers, arranges, or subcontracts dialysis services and/or distributes dialysis supplies and/or equipment within a 35-mile radius of certain of Defendant's dialysis centers;

2. soliciting, inducing, or encouraging employees of certain of Defendant's dialysis centers to curtail and/or terminate their affiliation and employment with Defendant;

3. soliciting, inducing, and/or encouraging patients of certain of Defendant's dialysis centers to curtail and/or terminate their affiliation with Defendant;

4. disclosing Defendant's confidential information and/or trade secrets;

---

[3]   For the sake of clarification, all references to "Plaintiff(s)" and "Defendant" mean Plaintiffs and Defendant in the instant action before the Court, even though said Plaintiffs are the defendants and Defendant is the plaintiff in the above-discussed arbitration proceedings.

5. failing to negotiate a renewal of the 1998 MDA in good faith and intentionally concealing material information from Defendant about their relationship with third parties; and/or

6. failing to include Defendant in, and intentionally concealing the existence of, direct and/or indirect negotiations for a contract that requires the delivery of dialysis services and/or dialysis related services.

Claims 3 and 4: Breach of the 1998 and 2005 MDAs, due to Plaintiffs' failure to obtain Plaintiff Flaxenburg's signature on a Joinder to the MDAs.

Claim 5: Breach of the implied covenant of good faith and fair dealing, as a result of the following conduct:

1. violating the non-solicitation provisions of the MDAs,

2. disclosing Defendant's confidential information and/or trade secrets,

3. criticizing, disparaging, and denigrating Defendant, and

4. serving as medical directors of two dialysis centers located less than one mile outside the non-compete radii set forth in the 1998 MDA.

Claim 6: Inducement of breach of contract (against all Plaintiffs) for the intentional interference of and causing the non-performance of one or more obligations under certain agreements between Defendant and its customers for the provision of dialysis services.

Claim 7: Fraud (against all Plaintiffs) for alleged misrepresentations about Plaintiffs' intentions regarding their business relationship with Defendant.

Claim 8: Fraudulent concealment (against all Plaintiffs) as a result of Plaintiffs' alleged concealment of their third party negotiations for the provision of dialysis services and alleged construction of several dialysis centers within a 35-mile non-compete radius identified in the 1998 MDA.

## C. Plaintiffs' Initiation of this Action

On April 22, 2009, more than one month before Defendant filed its Amended Arbitration Demand, Plaintiffs initiated this action by filing a Complaint that asserted the following claims: declaratory judgment that the non-competition provisions in the 1998, 2005, and 2006 MDAs are void and unenforceable against Plaintiffs PPNA and the Shareholder Physicians (Claims 1, 2, and 3, respectively); declaratory judgment that the 1998, 2005, and 2006 MDAs are unenforceable against Plaintiff Flaxenburg (Claim 4); unfair competition[4] on behalf of all Plaintiffs (Claim 5); and tortious interference with existing and prospective business relations[5] on behalf of all Plaintiffs (Claim 6). (Doc. #1 at 11-16).

## D. The Parties' Arbitration-Related Motions

Plaintiffs contend that the 1998 and 2005 MDAs, on which Defendant's Amended Arbitration Demand is premised, "<u>do</u> <u>not</u> require the parties to arbitrate this dispute". (Doc. #5 at 4) (emphasis in the original). Plaintiffs also contend that the 1998 MDA's arbitration provision is illusory and, therefore, unenforceable, because it allows Defendant, but not Plaintiffs, to seek a temporary restraining order or preliminary injunction to restrain Plaintiffs from violating the MDA's non-competition provision. (*Id.*

---

[4] The unfair competition claim arises from Defendant's alleged anti-competitive and predatory acts of suddenly increasing its employee compensation and patient retention incentives, negotiating lower rates of reimbursement with private insurance providers, and forcing employees to sign stringent non-competition agreements, all in an attempt to drive out competition. (Doc. #1 at 13-15).

[5] The tortious intereference claim arises from Defendant's alleged attempts to prevent Plaintiffs from referring patients to competitive dialysis centers for treatment.

7

at 19).  Therefore, Defendant allegedly has a "right to unilaterally determine whether [certain breaches] of the 1998 MDA are brought in arbitration or in court[.]" (*Ia.*)

Finally, Plaintiffs assert that Plaintiff Flaxenburg "never contracted with [Defendant] to serve as a Medical Director at any of [Defendant's] dialysis clinics, despite being asked repeatedly by [Defendant] to do so."  Therefore, Plaintiffs contend that the MDAs' arbitration/mediation provisions do not apply to Plaintiff Flaxenburg and that Defendant's claims against Flaxenburg are "not viable".  (*Id.*)

Accordingly, Plaintiffs ask the Court to stay the arbitration proceeding in favor of the Court's deciding this dispute.  (*Ia.*)  Alternatively, Plaintiffs ask the Court to direct the parties "to conduct the arbitration proceeding pursuant to the specific terms of the parties' agreements." (*Id.*)

Defendant maintains that the claims raised in its Amended Arbitration Demand and in the Complaint, are subject to the MDAs' arbitration provisions.  (Doc. #14-2 at 1). In particular, Defendant contends that Plaintiffs' claims concerning the arbitration provisions' scope are matters for the arbitrator, not the Court, to decide because the

> arbitration provisions in each of the [MDAs] incorporate the rules of the American Arbitration Association (the 'AAA Rules').  Under the AAA Rules, the arbitrator(s), not the courts, determine the validity and the scope of the parties' arbitration agreement...[T]he parties' incorporation of the AAA Rules...constitutes an agreement to have the arbitrator(s) resolve [issues of validity and scope].  (*Ia.* at 1).

Finally, Defendant asks the Court to compel all claims arising from the 1998 and 2005 MDAs to arbitration, compel all claims arising from the 2006 MDA-related claims to

8

mediation, and stay all other claims not immediately compelled to arbitration (or mediation) until such time as the arbitration (or mediation) is completed. Defendant also maintains that Plaintiff Flaxenburg is bound by the terms of the MDAs as a "third-party beneficiary" and seeks the Court's leave to conduct a limited amount of discovery on this issue. (Doc. #14-2 at 21-22).

In sum, the parties do not dispute the existence of the MDAs' dispute resolution provisions, but they disagree as to the scope of those agreements and the validity of the 1998 MDA's arbitration provision. Accordingly, the Court must determine whether it has authority to determine the scope of the MDAs' arbitration provisions.

## II.     ANALYSIS

### A.     Standard

The Court has jurisdiction to consider this issue pursuant to section 4 of the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, which states that, "[t]he court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." "Before the party may be compelled to arbitrate under the [FAA], the district court must engage in a limited inquiry to determine whether a valid arbitration agreement exists between the parties and whether the specific dispute falls within the scope of that agreement." *Houlihan v. Offerman & Co.*, 31 F.3d 692, 694-95 (8th Cir. 1994); *see also Coors Brewing Co. v. Molson Breweries*, 51 F.3d 1511, 1515-16 (10th Cir. 1995); *Crawford v. United States Auto. Assoc. Ins.*, No. 06-cv-380, 2006 U.S. Dist. LEXIS

46433, at *20 (D. Colo. July 10, 2006). "The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues [including issues pertaining to construction of the contract language] should be resolved in favor of arbitration". *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

In the instant case, as previously noted, the parties do not dispute the existence of arbitration provisions within the 1998 and 2005 MDAs. Rather, the primary issue before the Court is whether the MDA's arbitration provisions clearly and unmistakably demonstrate that the parties agreed to submit the issue of arbitrability, or the scope of the arbitration provisions, to the arbitrators.

When matters of arbitrability are in dispute, a court must first decide whether it or an arbitration panel has jurisdiction to determine whether the asserted claims are subject to arbitration. *Qwest Corp. v. New Access Communications., LLC*, No. 03-N-1278, 2004 U.S. Dist. LEXIS 28523, at *17 (D. Colo. 2004). "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clear and unmistakable evidence that they did so."). *Riley Mfg. Co. v. Anchor Glass Container Corp.*, 157 F.3d 775, 779 (10th Cir. 1998). The presumption in favor of arbitration disappears when the parties dispute the existence of a valid arbitration agreement. *Id.*

    **B.**    <u>**Plaintiffs' Argument that the 1998 MDA is Unenforceable**</u>

As previously noted, Plaintiffs contend that the 1998 MDA's arbitration provision is illusory and, therefore, unenforceable because it allegedly allows Defendant, but not Plaintiffs, to seek a temporary restraining order or preliminary injunction to restrain

Plaintiffs from violating the MDA's non-competition provision. (Doc. #5 at 19-20). In support, Plaintiffs cite to *Dumais v. Am. Golf Corp.*, 299 F.3d 1216, 1219 (10th Cir. 2002). However, that case is inapposite. In *Dumais*, an employer had the unfettered right to alter the arbitration's existence or its scope. Thus, the Tenth Circuit determined that the arbitration provision was illusory and, therefore, unenforceable. 299 F.3d at 1218.

In the instant case, Plaintiffs duly acknowledge that, "the 1998 MDA does not give [Defendant] the right to alter the existence of the arbitration provision." (Doc. #5 at 20). Rather, the 1998 MDA merely gives Defendant avenues to immediately and preliminarily protect its rights and interests in advance of pursuing less-immediate courses of action (*e.g.*, arbitration) for full adjudication or resolution. Accordingly, the Court does not find the arbitration provision illusory. Despite Defendant's ability to pursue preliminary relief, Plaintiffs *and* Defendant are bound to arbitrate under paragraph 27 of the 1998 MDA:

> Any controversy, dispute, or claim arising out of or in connection with this Agreement, or the breach, termination or validity hereof, shall be settled by final and binding arbitration...

"One party's agreement to arbitrate is adequate consideration for the other party's agreement to arbitrate." *Crawford*, 2006 U.S. Dist. LEXIS 46433, at *25 (citing *Gibson v. Neighborhood Health Clinics*, 121 F.3d 1126, 1131 (7th Cir. 1997)). For the foregoing reasons, the arbitration provision in the 1998 MDA is enforceable.[6]

---

[6] Plaintiffs do not dispute the enforceability of the 2005 MDA's arbitration provision, but only its scope, which the Court addresses in the following section.

## C. Scope of the MDAs' Arbitration and Mediation Provisions

As previously noted, the 1998 and 2005 MDAs contain arbitration provisions, but the 2006 MDA contains a mediation provision. The 1998 MDA arbitration provision mandates that, "[a]ny controversy, dispute or claim arising out of or in connection with this Agreement, or the *breach*, termination, or *validity* hereof, shall be settled by final and binding arbitration." (Doc. #5, Ex. E, ¶ 27) (emphasis added). The provision also states that the arbitration shall be conducted "pursuant to the rules of the American Arbitration Association." (*Id.*)

The 2005 MDA arbitration provision requires parties to first negotiate a resolution of "disputes aris[ing]...under [the] Agreement." If negotiation fails, "the dispute [except for alleged breaches of the non-competition and non-solicitation provision] shall be settled by final and binding arbitration...in accordance with the Commercial Arbitration Rules of the [AAA]." (Doc. #5, Ex. F, ¶ 25). Notably, the parties dispute the construction of the "except for" clause in the 2005 MDA.[7]

Defendant contends that the arbitration panel, not the Court, must decide which claims are arbitrable. In pertinent part, Defendant contends that, by incorporating the AAA Rules into the 1998 and 2005 MDAs, the parties "expressly agreed" that the AAA Rules would govern arbitrations under the 1998 and 2005 MDAs. (Doc. #14-2 at 12-

---

[7] The 1998 MDA has allegedly expired, while the 2005 and 2006 MDAs allegedly have not expired. (*See*, Doc. #1 at ¶ 25, Doc. #14-2 at 5, 7, 8). However, the Court notes that, "an arbitration provision in a contract is presumed to survive the expiration of that contract unless there is some express or implied evidence that the parties intend to override this presumption[.]" *Riley Mfg. Co.*, 157 F.3d at 781. In the instant case, no evidence overriding the presumption has been presented. Therefore, the arbitration provisions are presumed to survive.

13). Pursuant to Rule 7 of the AAA Rules, "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." (Doc. #14, Weir Affid., Ex. G at 103).

In response, Plaintiffs acknowledge that arbitrators currently have the power to determine the scope of an arbitration agreement, but contend they did not have such power under AAA Rules existing during the execution of the 1998 and 2005 MDAs. (Doc. #16 at 5). However, this argument is without merit. As the United States Supreme Court stated, "the [AAA] Rules...are not secondary interpretive aides that supplement our reading of the contract; they are prescriptions incorporated by the express terms of the agreement itself." *C&L Enters., Inc. v. Citizen Band Potawatomi Indian Tribe of Okla.*, 532 U.S. 411, 419, n.1 (2001). Plaintiffs attached the AAA rules purportedly in effect in 1998 to their Reply brief. (Doc. #16, Rothgery Affid., Ex. 1A). In no uncertain terms, those rules stated as follows:

> These rules *and any amendment of them* shall apply in the form obtained *at the time the demand for arbitration* or submission agreement is received by the AAA. The parties, by written agreement may vary the procedures set forth in these rules.

(Doc. #16, Ex. 1A, Rule 1, Commercial Arbitration Rules, American Arbitration Association, 1998) (emphasis added). Defendant filed its Original and Amended Arbitration Demands in 2009. Although Plaintiff is correct that the 1998 AAA Rules contain no provision granting arbitrators the authority to determine the scope of an arbitration agreement, there is no dispute that the AAA Rules in effect at the time Defendant filed its arbitration demands give arbitrators such authority.

13

Though the parties may not have expressly intended to have an arbitrator resolve scope-related objections, the parties allowed their MDAs to be subject to any AAA rule changes. The parties could have drafted the arbitration provisions such that they would not be subject to the vagaries of changing rules, but the parties did not so contract. Rather, when they incorporated, by reference, then-existing AAA Rules, including the aforementioned Rule 1, the parties contracted to be bound by any amendments to the AAA Rules. Accordingly, the Court finds that the parties acquiesced to the arbitrator's jurisdiction on matters of arbitrability or scope. *See P&P Indus., Inc. v. Sutter* Corp., 179 F.3d 861, 867 (10th Cir. 1999) ("A party who consents by contract to arbitration before the AAA also consents to be bound by the procedural rules of the AAA, unless the party indicates otherwise in the contract."); *Qwest Corp. v. New Access Communications, LLC*, No. 03-1278, 2004 U.S. Dist. LEXIS 28523, at *21-*22 (D. Colo. 2004) (parties' agreement that arbitrator would decide arbitrability evidenced by their incorporation of AAA rules providing for such jurisdiction); *Brandon, Jones, Sandall, Zeide, Kohn, Chala & Musso, P.A. v. MedPartners, Inc.*, 203 F.R.D. 677, 684-85 (S.D. Fla. 2001) (finding argument meritless that amendments to AAA rules did not apply).

For the foregoing reasons, the Court finds that it lacks subject matter jurisdiction to determine the scope of the arbitration provisions within the 1998 and 2005 MDAs. The parties are directed to resolve this issue in arbitration.[8]

---

[8] Pursuant to the 1998 MDA, arbitration shall occur in Denver, Colorado. (Doc. #5, Ex. E, ¶ 27). Pursuant to the 2005 MDA, arbitration shall occur in Colorado Springs, Colorado. (*Id.*, Ex. F, ¶ 25). The two MDAs also set forth different procedures for selecting arbitrators. The location of the arbitration shall be determined pursuant to AAA Rules. *See* AAA Rule 10 ("If a party objects to the locale requested by the other party, the AAA shall have the power to determine the locale, and its decision shall be final and

As previously noted, the 2006 MDA's dispute resolution provision does not provide for arbitration. Rather, the parties agreed to ***mediate*** their disputes before the AAA. Accordingly, in the interests of judicial efficiency and economy, to avoid conflicting findings, and in accordance with the provisions of the 2006 MDA, the parties' disputes under the 2006 MDA are to be submitted to the AAA for resolution.

### III.    <u>WHETHER PLAINTIFF FLAXENBURG, A NON-SIGNATORY TO THE MDAs, IS BOUND BY THE ARBITRATION CLAUSE</u>

Having directed the arbitrability and mediation disputes to the AAA for resolution, the Court next decides whether Plaintiff Flaxenburg, a non-signatory to the MDAs, is bound by the MDAs' dispute resolution provisions. Plaintiffs maintain that "Flaxenburg cannot be forced to defend himself against claims asserted in arbitration when he never agreed to arbitration as a forum for any disputes involving [Defendant]." This is the primary basis for the Complaint's fourth claim for declaratory relief. (Doc. #1 at 13). However, the Court finds this argument disingenuous.

"In order to decide whether arbitration or arbitrability is appropriate, a court must first determine whether the parties have a sufficient relationship to each other and to the rights created under the agreement." *Contac Corp. v. Remote Solution Co., Ltd.*, 398 F.3d 205, 209 (2d Cir. 2005) (finding sufficient relationship existed between signatory and non-signatory to compel arbitration) (cited in *Nazar v. Wolpoff & Abramson, LLP*,

---

binding."). The AAA Rules shall also govern the selection of arbitrators. See AAA Rules 11-13.

The Court recognizes that the 2005 MDA requires the parties to attempt negotiation in advance of arbitration. (Doc. #5, Ex. F, ¶ 25). However, given that the parties have been involved in contentious litigation, it is clear that they are unable to achieve an amicable resolution at this juncture. Thus, the Court finds that any further attempts at negotiation would be futile, and the dispute should proceed to arbitration.

No. 07-2025, 2007 WL 528753 (D. Kan. Feb. 15, 2007)). Because the duty to arbitrate arises from contractual provisions, a court must first determine the existence of an agreement to arbitrate before compelling arbitration. *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 547 (1964).

In the instant case, although Plaintiff Flaxenburg swears that he has never signed any MDA, Dr. Flaxenburg is a co-plaintiff in the instant case and specifically seeks declaratory judgment concerning the invalidity and unenforceability of the 1998, 2005, and 2006 MDAs. (Doc. #1, at 13, Claim 4; Doc. #5, Ex. D, Flaxenburg Affid., ¶¶ 12-14). Moreover, Dr. Flaxenburg joins the other Plaintiffs' tort claims (Claims 5 and 6), which arise from the parties' (contractual) relationship. (*Id.*, ¶¶ 73(d) and (e) and 82). On one hand, Dr. Flaxenburg, as a co-plaintiff in the instant action, seeks a determination of his rights under the MDAs and seeks damages resulting from his professional relationship with Defendant, which relationship arises from the MDAs. On the other hand, Dr. Flaxenburg argues that the MDAs do not apply to him because he did not sign them.[9]

The instant case is distinguishable from the three cases cited in Plaintiffs' Motion (Doc. #5) and Reply (Doc. #16). In the instant case, Dr. Flaxenburg has not only asserted a claim for declaratory judgment regarding the unenforceability of the MDAs,

---

[9] Beyond an affidavit from Dr. Flaxenburg (Doc. #5, Ex. D), the record lacks evidence concerning the extent to which Dr. Flaxenburg accepted benefits pursuant to the MDAs, or may otherwise be bound under principles of third-party beneficiary, promissory estoppel, or detrimental reliance. Because of this lack of evidence, Defendant seeks leave to conduct limited discovery on this issue. (Doc. #14-2 at 22). However, the matter of additional discovery is properly within the arbitrator's purview. *See* AAA Rules 20 ("Preliminary Hearing") and 21 ("Exchange of Information"). Accordingly, the Court also submits the issue of additional discovery to arbitration.

Dr. Flaxenburg has also asserted claims for tortious conduct arising from his relationship with Defendant. In contrast, in *ARW Exploration Corp. v. Aguirre*, 45 F.3d 1455 (10th Cir. 1995), the Tenth Circuit reversed the district court's order compelling the *defendant* to arbitration. That defendant allegedly neither signed the arbitration agreement in his individual capacity nor asserted any claims arising under the agreement. *Id.* at 1460-61. Second, *Howsam v. Dean Witter Reynolds*, 537 U.S. 79 (2002) is entirely inapplicable, as that case concerned whether the time limit for arbitrating certain claims had expired. Third, *AT&T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643 (1986) concerned what issues are subject to arbitration, not what *parties* or *persons*, as in the case of Dr. Flaxenburg.

A number of factors undermine Dr. Flaxenburg's contention that he is not bound by the provisions of the MDAs merely because he was not a signatory thereto. First, Dr. Flaxenburg's affidavit suggests that he provided services to Defendant as a medical doctor with Plaintiff PPNA, which refers its patients to local dialysis clinics, including those owned by Defendant. (*See* Doc. #5, Ex. D, Flaxenburg Affid., ¶¶ 1, 6-7). Second, Dr. Flaxenburg is participating as a plaintiff in the instant lawsuit, which concerns the validity and enforcement of the MDAs, as well as Defendant's alleged tortious conduct arising from the parties' (contractual) relationship. Therefore, because Dr. Flaxenburg seeks adjudication of his rights and remedies under the MDAs, and because he provided services to Defendant pursuant to the MDAs, i.e., he seeks the benefits of the MDAs, it follows that he would at least be bound by the contractual procedures for resolving disputes arising therefrom. Therefore, the Court finds that any disputes

between Dr. Flaxenburg and Defendant should also be resolved in the same manner as the disputes between the other Plaintiffs and the Defendant.

## IV. CONCLUSION

Accordingly, for the foregoing reasons, IT IS ORDERED THAT Plaintiffs' Motion to Stay Arbitration Proceeding or, Alternatively, for Order Compelling Arbitration Pursuant to Terms fo Agreements (Doc. #5) and Defendant's Motion to Compel Arbitration Pursuant to 9 U.S.C. § 4 or, Alternatively, for a Stay Pending Resolution of Arbitration (Doc. #14) are GRANTED IN PART and DENIED IN PART.

IT IS FURTHER ORDERED THAT the parties shall submit claims 1, 2, 4, 5, and 6 to arbitration, to the extent they arise under the 1998 and 2005 MDAs. The arbitration shall be conducted as agreed upon in the MDAs. Where the MDAs conflict, the arbitration shall be conducted pursuant to the AAA Rules.

IT IS FURTHER ORDERED THAT Defendant shall submit to the AAA any request to conduct limited discovery concerning the extent to which Plaintiff Dr. Jesse A. Flaxenburg is bound by the MDAs.

IT IS FURTHER ORDERED THAT, to the extent claims 3 and 4 arise under the 2006 MDA, the parties shall submit claims 3 and 4 to AAA for mediation. The mediation shall be conducted as agreed upon in the MDA. Where the MDA is silent on procedural matters, the mediation shall be conducted pursuant to the AAA's mediation procedures.

IT IS FURTHER ORDERED THAT this action shall be stayed, pursuant to 9 U.S.C. § 3, until the conclusion of the above-described arbitration and mediation.

IT IS FURTHER ORDERED THAT this case is administratively closed until the

parties submit a status report regarding the conclusion of the proceedings before the AAA. Such status report is to be submitted to the Court within 10 days of the AAA's decision.

DATED: March 30, 2010.

BY THE COURT:

CHRISTINE M. ARGUELLO
United States District Judge